UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMES HANDFORD,

                    Petitioner,

    -against-                                  9:19-CV-0434 (LEK/DEP)

SPAULDING, Warden,

                    Respondent.
_____

**DECISION AND ORDER**

**I.    INTRODUCTION**

Petitioner James Handford filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Dkt. No. 1 ("Petition"). He is confined at the Federal Medical Center in Devens, Massachusetts ("FMC Devens"). On April 11, 2019, the Court administratively closed the action because it had not been properly commenced; Petitioner had not paid the statutory filing fee or filed a properly certified in forma pauperis ("IFP") application. Dkt. No. 2 ("April 11, 2019 Order"). On April 29, 2019, the Court received the statutory filing fee, and the case was reopened. Dkt. No. 3 ("April 29, 2019 Order").

**II.    RELEVANT BACKGROUND**

On June 19, 2014, the United States filed a criminal complaint charging Petitioner with violating 21 U.S.C. §§ 841(a)(1) and 846 by conspiring to possess with the intent to distribute a controlled substance from April 2013 through June 2014. United States v. Hanford, No. 5:14-CR-273 ("Criminal Docket"), Dkt. No. 1 ("Criminal Complaint"). On July 16, 2014, a grand jury

1

returned an indictment against Petitioner charging him with conspiracy to possess with the intent to distribute and to distribute one kilogram or more of heroin. Cr. Dkt. No. 36 ("Indictment"). On February 3, 2015, Petitioner pled guilty to the indictment. Cr. Dkt., Feb. 3, 2015 Minute Entry; Cr. Dkt. No. 126 ("Plea Agreement"). On June 30, 2015, the Honorable Glenn T. Suddaby, U.S. District Judge, sentenced him to 120 months of imprisonment and five years of supervised release. Cr. Dkt., June 30, 2015 Minute Entry; Cr. Dkt. No. 179 ("Judgment"); see also Pet. at 1.

On March 21, 2016, Petitioner moved to vacate his conviction pursuant to 28 U.S.C. § 2255. United States v. Hanford, No. 14-CR-273, 2016 WL 8670498, *1 (N.D.N.Y. Oct. 25, 2016). Petitioner argued that

> (1) [trial counsel] did not give [Petitioner] the discovery he received from the Government, nor did [trial counsel] "show or produce a motion of discovery"; (2) [trial counsel] gave [Petitioner] "a deadline to cooperate or take a plea within 60 days of [his] bail" and "insisted that [Petitioner] take a plea, and cooperate with government officials"; (3) [trial counsel] failed to argue that [petitioner] has a 15-year drug addiction problem; (4) [trial counsel] failed to request a quantity hearing or argue "that the quantity was under a (1 kilo) of heroin"; and (5) [trial counsel] failed to argue that incriminating statements recorded on a wiretap had alternative explanations.

Id. at *2. The Court denied Petitioner's motion, finding that: (1) Petitioner "made a voluntary and intelligent waiver of his right to collaterally attack his sentence," and the waiver was enforceable; (2) even if Petitioner had not waived his ineffective assistance of counsel claims, he failed to show that his counsel's performance fell below "the wide range of professionally competent assistance"; and (3) due to the strength of the evidence against him, if Petitioner had "not plead guilty, there is a substantial likelihood the result of the proceeding would have been different, but to [Petitioner's] detriment." Id. at *5–*8 (internal quotation marks omitted). Therefore, Petitioner

2

did not meet the "highly demanding and rigorous" standard for showing a constitutional violation under Strickland v. Washington, 466 U.S. 668, 687–94 (1984). Id. at *7 (quoting Bennett v. United States, 663 F.3d 71, 85 (2d Cir. 2011)).

## III. THE PRESENT PETITION

In his present Petition, Petitioner claims that: (1) the sentencing court failed to make individualized findings, Pet. at 6; (2) his trial counsel "never presented discovery of motion," id. at 7; (3) his trial counsel's "defense was solely cooperation;" "every time [counsel] came to visit, it was all about cooperation and what the government wants," id.; and (4) the evidence supporting that he possessed more than one kilogram of heroin consisted of "hearsay/opinions or false statements," id. at 8. Further, petitioner requests that the Court to re-sentence him under First Step Act and Second Chance Act. Id. at 9.

## IV. DISCUSSION

### A. Habeas Corpus under §§ 2241 or 2255

A federal prisoner may challenge his or her detention under §§ 2241 or 2255. Chambers v. United States, 106 F.3d 472, 474 (2d Cir. 1997). Second 2255 provides the mechanism for prisoners to attack a sentence "on the grounds that it was 'imposed in violation of the Constitution'" and is therefore invalid. Morales v. United States, 635 F.3d 39, 42–43 (2d Cir. 2011) (quoting § 2255(a)); see also Dioguardi v. United States, 587 F.2d 572, 573 (2d Cir. 1978) ("A motion under section 2255 must . . . be directed to the sentence as it was imposed, not to the manner in which it is being executed."). A motion under § 2255 must be brought in the sentencing court. Boumediene v. Bush, 553 U.S. 723, 775 (2008). If the district court denies the motion, the petitioner may seek to appeal to the appropriate court of appeals for the district of

sentencing. Rule 11, Rules Governing Section 2255 Proceedings For the United States District Courts; see also Fed. R. App. P. 4(a) (governing time to take an appeal); Fed. R. App. P. 22 (governing appeals in § 2255 and other habeas corpus cases).

The Anti-terrorism and Effective Death Penalty Act ("AEDPA") "contains a gate-keeping feature that limits a prisoner's ability to file a second or successive § 2255 motion." Adams, 372 F.3d at 135. When a petitioner has already filed a § 2255 motion and seeks to file another, the appropriate Court of Appeals must certify that the motion relies on:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

Id. (quoting § 2255(h)).

By contrast, a petition under § 2241 is the proper way to "attack the *execution* of a sentence." Adams v. United States, 372 F.3d 132, 135 (2d Cir. 2004). For example, a petitioner may use a § 2241 petition to challenge a federal official's computation of a sentence, parole decisions, or prison disciplinary actions. Id.; see also Cook v. N.Y. State Div. of Parole, 321 F.3d 274, 278 (2d Cir. 2003) (citing examples). Petitions filed under section 2241 must name the petitioner's warden as the respondent and be filed in the district where the petitioner is confined. § 2241(a); see also Rumsfeld v. Padilla, 542 U.S. 426, 435, 447 (2004) ("[I]n habeas challenges to present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held.").

"[F]ederal prisoners generally must invoke § 2255 instead of § 2241 to challenge a sentence as violating the U.S. Constitution or laws." Adams, 372 F.3d at 135 (citing § 2255(e)).

4

A federal prisoner may use § 2241 to challenge the validity of a conviction or sentence, but only in exceptional circumstances; the petitioner must show that the normal remedy under § 2255 is "inadequate or ineffective to test the legality of his [or her] detention," making § 2241 the only recourse. Cephas v. Nash, 328 F.3d 98, 104 (2d Cir. 2003) (quoting § 2255(e)). The Second Circuit discussed this exception at length in Triestman v. United States, 124 F.3d 361, 373–74 (2d Cir. 1997). The court cautioned that the exception is narrow and exists solely "to preserve habeas corpus for federal prisoners in those extraordinary instances where justice demands it." Id. Section 2255 is "inadequate or ineffective" only when the failure to allow collateral review would raise serious constitutional questions because the petitioner "(1) can prove 'actual innocence on the existing record,' and (2) 'could not have effectively raised [his] claim[s] of innocence at an earlier time.'" Cephas, 328 F.3d at 104 (quoting Triestman, 124 F.3d at 363).[1] Section 2255 is "*not* inadequate or ineffective simply because the prisoner cannot meet the AEDPA's gate-keeping requirements, so long as the claim the prisoner seeks to raise was previously available to him on direct appeal or in a prior § 2255 petition." Adams, 372 F.3d at 135 (emphasis in original); see also Triestman, 124 F.3d at 376 ("If . . . any prisoner who is prevented from bringing a § 2255 petition could, without more, establish that § 2255 is 'inadequate or ineffective,' . . . then Congress would have accomplished nothing at all in its attempts—through statutes like the AEDPA—to place limits on federal collateral review.").

---

[1] "To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley v. United States, 523 U.S. 614, 623 (1998) (quoting Schlup v. Delo, 513 U.S. 298, 327–28 (1995)).

*1. Ineffective Assistance and Failure to Provide Individualized Findings*

Petitioner asserts that § 2241 authorizes his claims. However, his chief contentions—that his counsel and the judge made mistakes that should invalidate his conviction and sentence, See Pet. at 6–7—allege problems with how his sentence was *imposed*, not how it was *executed*. See Adams, 372 F.3d at 135 (explaining that § 2241 is for claims regarding "the administration of [a petitioner's] parole, computation of his sentence by parole officials, disciplinary actions taken against him, the type of detention, and prison conditions in the facility where he is incarcerated," but not challenges to the validity of the sentence itself). Therefore, these claims must be brought under § 2255—unless he can show that he is actually innocent and could not have brought the claims previously. Cephas, 328 F.3d at 104.

However, Petitioner does not allege or offer any evidence that he was actually innocent of conspiring to distribute heroin, or "that the distribution of one kilogram of heroin" was not "'reasonably foreseeable' to [him] pursuant to his participation with the group," as he previously admitted. Handford, 2016 WL 8670498, *7–8 (reviewing the government's "strong" evidence supporting Petitioner's guilty plea, including Petitioner's admissions that he "obtained large quantities of heroin (i.e., approximately twenty (20) to thirty (30) 'bricks' of heroin every two (2) to three (3) days" and was "personally accountable" for one to three kilograms of heroin). Nor has Petitioner identified any reason he could not have raised these claims earlier. In fact, he raised several of his present claims in his first § 2255 petition. See id. at *2, *5–8 (discussing and dismissing claims that counsel failed to "show or produce a motion for discovery" or "request a quantity hearing or argue that the quantity was under a (1 kilo) of heroin"). The fact that his claims were previously dismissed, and that the AEDPA prevents him from asserting them again,

does not mean that § 2255 afforded Petitioner an "inadequate or ineffective" opportunity to litigate those claims. Adams, 372 F.3d at 135. Therefore, § 2255(e)'s exception is inapplicable, and the Court lacks the power to consider Petitioner's claims under § 2241. See id. (finding no jurisdiction under § 2241 when petitioner did not allege actual innocence, and raised claims in prior petition).

Although the Court could treat the Petition as if it had been brought under § 2255 and transfer it to the Second Circuit for certification, id. at 136, it declines to do so. When a petitioner files a § 2241 petition

> in an attempt to evade § 2255's limits on second or successive petitions, and when the petitioner has already had a prior § 2255 petition dismissed on the merits . . . the district court can treat the § 2241 petition as a second or successive § 2255 petition and refer the petition to [the appropriate Court of Appeals] for certification or, if it is plain from the petition that the prisoner cannot demonstrate that a remedy under § 2255 would be inadequate or ineffective to test the legality of his detention, the district court may dismiss the § 2241 petition for lack of jurisdiction.

Id. (citations omitted); see also Cephas, 328 F.3d at 105 ("[W]here. . . petitioner invokes § 2241 jurisdiction to raise claims that clearly could have been pursued earlier, or where his asserted innocence is plainly belied by the record, then the savings clause of § 2255 is not triggered and dismissal of the § 2241 petition for lack of jurisdiction is warranted."). Since it clear that Petitioner cannot satisfy § 2255(e) (as required bring a § 2241 petition) or (h)(1)–(2) (as required to bring a second § 2255 petition)—as he does not reference new evidence or a change in the law—the Court dismisses the Petition for lack of jurisdiction.

2. *First Step and Second Chance Acts*

Petitioner also suggests that he is entitled to relief under the Second Chance Act of 2007

7

and the First Step Act of 2018. Pet. at 9. Neither statute empowers this Court to grant Petitioner relief.

> [I]n 2008 Congress enacted the Second Chance Act of 2007 ("Second Chance Act") in an attempt to improve prisoner reentry. See Pub. L. No. 110-199, 1222 Stat. 657 (2008) (codified as amended at 18 U.S.C. §§ 3621, 3624). The Second Chance Act modified Title 18 U.S.C. § 3624(c) in three notable ways: (1) it doubled the maximum prerelease [Residential Reentry Center ("RRC")] placement period from 6 to 12 months, (2) it required the BOP to make RRC placement decisions on an individual basis, and (3) it required the BOP to ensure that, consistent with the factors in Section 3621(b), the duration of the RRC placement period gives the inmate the greatest likelihood of successful community reintegration.

Owusu-Sakyi v. Terrell, No. 10-CV-507, 2010 WL 3154833, at *2 (E.D.N.Y. Aug. 9, 2010). "However, the BOP retains discretion under the Second Chance Act to decide when and whether an inmate should be placed at an RRC after considering the factors set forth in 18 U.S.C. § 3621." United States v. Henderson, No. 15-CR-0487, 2019 WL 1460402, at *2 (S.D.N.Y. Mar. 19, 2019) (internal quotation marks and citations omitted). The BOP must make this determination before the prisoner can pursue habeas relief; therefore, "federal inmates who seek to challenge the conditions of their confinement must first utilize the [four step] Administrative Remedy Program . . . developed by the BOP." Owusu-Sakyi, 2010 WL 3154833, at *3. Petitioner does not allege he has done so.

"Enacted in 2018, the First Step Act," Pub. L. No. 115-391, 132 Stat. 5194, "was the result of a bipartisan legislative effort to moderately overhaul the criminal justice system." United States v. Simons, No. 07-CR-874, 2019 WL 1760840, at *4 (E.D.N.Y. Apr. 22, 2019). "The Act modified prior sentencing law and expanded vocational training, early-release programs, and other programing designed to reduce recidivism." Id. Among other things, the First Step Act "amends 18 U.S.C. § 3624(b)(1) to change the manner of calculating good-time credit and allow for an increase in the maximum good-time credit from 47 to 54 days per year." United States v. Scouten, No. 13-CR-20,

8

2019 WL 1596881, at *1 (W.D.N.Y. Apr. 15, 2019).

These claims concern the execution of Petitioner's sentence and, therefore, could be cognizable under § 2241 if other jurisdictional and procedural requirements were met. See Cook, 321 F.3d at 278; see also United States v. Parrett, No. 01-CR-168, 2019 WL 1574815, at *2 (E.D. Wis. Apr. 11, 2019) ("[W]hen the good-time provisions of the [First Step] Act do go into effect, the proper vehicle for [a prisoner] to use to request relief (after exhausting administrative remedies) would be a petition for habeas corpus under 21 U.S.C. § 2241."). However, petitions under § 2241 must be filed in the judicial district with jurisdiction over the prisoner's current custodian. Rumsfeld v. Padilla, 542 U.S. 426, 434–35 (2004); see also 28 U.S.C. §§ 2242, 2243. The warden of FMC Devens—which is in Massachusetts—resides in the District of Massachusetts, not the Northern District of New York. Therefore, § 2241 does not provide this Court with jurisdiction over any of Petitioner's claims.

Petitioner's First Step Act claim fails for an additional reason. The First Step "Act's good-time provisions have not yet taken effect; before they do, the Attorney General must complete the 'risk and needs assessment system.'" Id. (quoting First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, §§ 101(a), 102(b)(2)(B)). The Attorney General need not do so until 210 days after the Act's enactment, or July 2019. Id. Therefore, Petitioner's claim under the First Step Act is unripe. See Matthews v. Williams, 19-CV-518, 2019 WL 1639776, at *1 (N.D. Ohio 2019) ("Since the enactment of the First Step Act, federal inmates . . . arguing that the statute requires immediate recalculation of their good-time credit . . . have [been] denied their petitions for nonjusticiability for lack of ripeness, failure to exhaust administrative remedies, and because the change in law has not yet taken effect.") (citing cases).

### B. Re-sentencing Pursuant to the First Step Act

The First Step Act also contains a remedy independent of § 2241. The Act "permits a court that imposed a sentence for a 'covered offense' to now 'impose a reduced sentence as if sections 2 and 3 of the Fair Sentence Act of 2010' were in effect at the time the 'covered offense' was committed." United States v. Davis, No. 07-CR-245, 2019 WL 1054554, at *1 (W.D.N.Y. 2019) (citing First Step Act, § 404(b)); accord United States v. Powell, 360 F. Supp. 3d 134, 138 (N.D.N.Y. 2019) (same). "A 'covered offense' is 'a violation of a [f]ederal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act,' that was committed before August 3, 2010." Id. (citing First Step Act, § 404 (a)).

However, the First Step Act's re-sentencing provision does not apply to Petitioner's offense. At his plea hearing, Petitioner admitted to participation in drug transactions occurring in 2013 and 2014. Because Petitioner's offense was not "committed on or before August 2010," he is "not eligible for a sentence reduction under the First Step Act." Henderson, 2019 WL 1460402, at *2 (denying motion for sentence reduction pursuant to First Step Act where defendant was involved in a drug conspiracy from 2014 to 2015, after the August 2010 cut-off).

### V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Petition (Dkt. No. 1) is **DISMISSED** for lack of jurisdiction; and it is further

**ORDERED**, that no Certificate of Appealability shall issue because petitioner failed to make

a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[2] and it is further

**ORDERED**, that any further request for a Certificate of Appealability must be addressed to the Court of Appeals, Fed. R. App. P. 22(b); and it is further

**ORDERED**, that the Clerk serve a copy of this Decision and Order upon Petitioner in accordance with the Court's Local Rules of Practice.

**IT IS SO ORDERED.**

Dated:   May 15, 2019
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

---

[2] See Richardson v. Greene, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation").